IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LANIQUE ROBERSON,                   )
                                    )
                Plaintiff,          )
                                    )
v.                                  )      Civil Action No. 3:20cv277–HEH
                                    )
SMG FOOD & BEVERAGE, LLC,           )
*et al.,*                           )
                                    )
                Defendants.         )

## MEMORANDUM OPINION
### (Granting Defendants' Motions to Dismiss)

This matter is currently before the Court on Defendant SMG Food and Beverage,

LLC's ("SMG") Motion to Dismiss (ECF No. 11), as well as Defendant Timothy

Ruffin's ("Ruffin") Motion to Dismiss (ECF No. 13), both of which were filed on May

22, 2020.[1] Lanique Roberson ("Plaintiff") filed her Complaint in the City of Richmond

Circuit Court on February 19, 2020 (ECF No. 1-1), alleging negligence, and Defendants

subsequently removed the case to this Court on April 17, 2020 (ECF No. 1).  Shortly

thereafter, Plaintiff filed her Amended Complaint on May 8, 2020 (Am. Compl., ECF

No. 7), and Defendants now seek to dismiss Plaintiff's Amended Complaint for lack of

subject matter jurisdiction.  The parties have fully briefed the issues, and the Court heard

oral argument on July 16, 2020.  For the reasons that follow, the Court will grant

Defendants' Motions to Dismiss.

---

[1] Where appropriate, Defendants SMG and Ruffin will be collectively referred to as
"Defendants."

In a motion brought pursuant to Rule 12(b)(1), the "court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings." *Valasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1999)).[2] The Court notes that, in the Amended Complaint, Plaintiff references Defendant SMG's contractual relationship with Neighborhood Housing Services of Richmond, Inc. ("NHSR") but failed to attach evidence of this relationship to her Amended Complaint. (Am. Compl. ¶ 5.) Defendant SMG attached this contract (the "Subcontract"), however, to its Motion to Dismiss. (*See* Def.'s Mem. Supp. Mot. Dismiss Ex. A, ECF No. 11-2.) Therefore, the Court will consider the Subcontract in addressing Defendants' Motions.[3]

On or about April 17, 2019, Defendant Ruffin was supervising and managing concessions, on behalf of Defendant SMG, at the Dominion Energy Center (the "Center")[4] in Richmond, Virginia. (Am. Compl. ¶¶ 3–4.) For paid events held at the

---

[2] The United States Court of Appeals for the Fourth Circuit has affirmed a dismissal for lack of subject matter jurisdiction in similar cases involving the Virginia Workers' Compensation Act. *See, e.g., Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647–50 (4th Cir. 1999); *Demetres v. E. W. Constr., Inc.*, 995 F. Supp. 2d 539 (E.D. Va. 2014) (Smith, J.), *aff'd*, 776 F.3d 271 (4th Cir. 2015). *But see Harvard v. Perdue Farms, Inc.*, 403 F. Supp. 2d 462, 464–65 (D. Md. 2005) (construing the motion as one brought under Rule 56). Additionally, Defendants' characterize their challenge to Plaintiff's lawsuit as jurisdictional. Therefore, this Court will conduct a Rule 12(b)(1) analysis.

[3] As the Amended Complaint and Defendants' Motions also evince a relationship between the owner of the Dominion Energy Center—the Richmond Performing Arts Tenant, LLC—and Defendant SMG, the Court requested that the parties make any such contract existing between those entities part of the record. The parties complied on June 12, 2020. (*See* Notice Ex. A [hereinafter the "Contract"], ECF No. 22-1.) Accordingly, the Court will also consider the Contract in addressing Defendants' Motions.

[4] The Dominion Energy Center is also known as the Carpenter Theatre.

Center, Defendant SMG engaged volunteers through its contractual relationship with

NHSR to serve as bartenders or concessionaires. (*Id.* ¶ 5.)  Plaintiff served as a NHSR

volunteer bartender on April 17, 2019, and reported to the Center for work that afternoon.

(*Id.* ¶ 7.)

Volunteer bartenders at the event were tasked with selling beer to event attendees.

(*Id.* ¶ 5.)  Defendant SMG kept, maintained, and used a refrigerator at the Center, in

which it stored beer for sale during events. (*Id.*)  During their shifts, volunteer bartenders

would retrieve beer from this refrigerator in order to complete their sales. (*Id.*)

Prior to the event on April 17, 2019, Defendant Ruffin, among others, found

frozen, broken bottles in the refrigerator at the Center. (*Id.* ¶ 6.)  Defendant Ruffin

indicated that he would have housekeeping clean the refrigerator. (*Id.*)  However,

Plaintiff was not alerted to the state of the refrigerator, and during her shift, she lacerated

her right index finger on the frozen, broken glass in the refrigerator. (*Id.* ¶ 7.)  Plaintiff

brought this lawsuit as a result, and Defendants now seek to dismiss Plaintiff's Amended

Complaint for lack of subject matter jurisdiction.[5]

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins.*

*Co.*, 511 U.S. 375, 377 (1994).  They possess only such power as is authorized by the

Constitution or conferred by statute. *Id.*  "The requirement that jurisdiction be

established as a threshold matter 'spring[s] from the nature and limits of the judicial

---

[5] In the event this Court finds that it may exercise subject matter jurisdiction, Defendant Ruffin also seeks to dismiss the claims against him on the grounds that Plaintiff has failed to state a claim upon which relief may be granted.

power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)).  Accordingly, Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction over the action.  Plaintiffs have the burden of proving subject matter jurisdiction by a preponderance of the evidence.  *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009); *Piney Run Pres. Ass'n v. Cty. Comm'rs*, 523 F.3d 453, 459 (4th Cir. 2008).  However, a court should apply the standard applicable to a motion for summary judgment, and "should grant [a] Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citation omitted), *cert. denied*, 503 U.S. 984 (1992).

Because it has jurisdictional implications, the Court must initially address Defendants' challenge to subject matter jurisdiction under Rule 12(b)(1).  As this Court's jurisdiction would be based on diversity of citizenship if jurisdiction is established, the substantive law of Virginia governs.  *Benner v. Nationwide Mut. Ins. Co.*, 93 F.3d 1228, 1234 (4th Cir. 1996); *see Demetres v. E. W. Constr., Inc.*, 995 F. Supp. 2d 539, 543 (E.D. Va. 2014) (Smith, J.) ("[The United States Court of Appeals for the Fourth Circuit] has determined that Virginia law applies to a diversity tort action brought in a Virginia federal court regarding whether the exclusivity provision of the [Virginia Workers'

Compensation Act] bars the claim." (citing *Garcia v. Pittsylvania Cty. Serv. Auth.*, 845
F.2d 465, 466–68 (4th Cir. 1988))), *aff'd*, 776 F.3d 271 (4th Cir. 2015).

Defendants argue that Plaintiff's claim is barred by the exclusivity provision of the
Virginia Workers' Compensation Act (the "Act"), Va. Code § 65.2-100 *et seq.*, and this
Court agrees.  Therefore, this Court finds Plaintiff has failed to establish subject matter
jurisdiction would be proper in this Court, and thus it must dismiss Plaintiff's Amended
Complaint.

The Virginia Workers' Compensation Act limits an employee's right of action for
injuries sustained during the course of her employment to only those remedies available
under the Act—thereby prohibiting common law actions against employers for those
same injuries.  Va. Code § 65.2-307(A).  This provision applies so long as a plaintiff and
defendant are considered to have an employer-employee relationship under the Act.  *Id.*
A defendant-employer constitutes a statutory employer under the Act when it engages
workers to perform part of its "trade, business, or occupation."  Va. Code § 65.2-302(A)–
(C).  This principle has been applied and is well-established in circumstances involving
general contractors and subcontractors.  Va. Code § 65.2-203(B); *see Sykes v. Stone &
Webster Eng'g Corp.*, 41 S.E.2d 469 (Va. 1947).

The Supreme Court of Virginia has addressed the confusion surrounding the
determination of whether a plaintiff-employee is engaged in the "trade, business, or
occupation" of a defendant-employer.  *See Stone v. Door-Man Mfg. Co.*, 537 S.E.2d 305,
309–11 (Va. 2000) (discussing three tests).  Initially, that court held that "[t]he test . . . is
whether this indispensable activity is, in that business, [n]ormally carried on through

employees rather than independent contractors." *Shell Oil Co. v. Leftwich*, 187 S.E.2d 162, 167 (Va. 1972) (citing *Hipp v. Sadler Materials Corp.*, 180 S.E.2d 501 (Va. 1971); *Burroughs v. Walmont*, 168 S.E.2d 107 (Va. 1969)). This test was later modified to except from such instances "cases where the work is obviously a subcontracted fraction of a main contract."[6] *Stone*, 537 S.E.2d at 310. The third revision of the test, known as the "stranger to the work" test, derives from Va. Code § 65.2-309(A), and recognizes the right of an injured worker to maintain a common law action for personal injury against an "other party." *Id.* This development followed a ruling that the original test, coined as "normal work" test, is inapplicable when an employee of a general contractor makes a personal injury claim against a subcontractor. *Id.* (citing *Whalen v. Dean Steel Erection Co.*, 327 S.E.2d 102, 106 (Va. 1985)).

It is thus suggested that claims by an employee of a subcontractor against a general contractor or owner should be subject to the "normal work test," *see id.* at 309 (citing *Whalen*, 327 S.E.2d at 105 (collecting cases)), whereas claims by an employee of an owner—or claims by an employee of a general contractor against a subcontractor—are better suited for the "stranger to the work" test, *see id.* at 309 n.4 (collecting cases); *id.* at 310. Accordingly, as Plaintiff is a volunteer for subcontractor NHSR, bringing a claim against general contractor and Defendant SMG as well as its employee, Defendant

---

[6] "[I]n the context of the construction business," this test has been further narrowed. *See Stone*, 537 S.E.2d at 310 (quoting *Cinnamon v. Int'l Bus. Mach. Corp.*, 384 S.E.2d 618, 620 (Va. 1989)). As this matter does not involve construction, any distinction specific to that context is not relevant here. However, the Supreme Court of Virginia has made clear that the test—without such narrowing—remains applicable, where appropriate, outside of the context of the construction business. *See, e.g., Smith v. Horn*, 351 S.E.2d 14, 17–18 (Va. 1986); *Cooke v. Skyline Swannanoa, Inc.*, 307 S.E.2d 246, 249 (Va. 1983).

Ruffin, the "normal work" test appears to be the appropriate test for application to the immediate case.

Bartending, the work in which Plaintiff was engaged at the time of her injury, is the primary work conducted by Defendant SMG. When Defendant SMG's own employees are able, they engage in bartending at the stands at the Center.[7] (ECF No. 11-1 ¶ 9.) It is not only the primary work of Defendant SMG's employees, but it—along with concessions, generally—is essential to Defendant SMG's business.

Additionally, of particular significance in applying the "normal work" test can be the degree of control exercised by the plaintiff-employee. *See Shell Oil Co.*, 187 S.E.2d at 167 (analyzing the degree of control exercised by the plaintiff in order to determine whether an activity is normally carried on by the defendant's employees or independent contractors). Here, Defendant SMG enlisted NHSR volunteers, including Plaintiff, to serve as bartenders and concessionaires during an event at the Center. (Am. Compl. ¶ 5.) Plaintiff was to "retrieve beer(s) from the refrigerator at the time of sale to customers," and "at no time referenced herein did NHSR exercise dominion or control over said refrigerator." (*Id.*) This stands in direct contrast to the facts of *Shell Oil Co.*, where the Supreme Court of Virginia found that the defendant was not the statutory employer of a service station worker. 187 S.E.2d 162.

---

[7] That the "normal work" test produces this result is further supported by *Carmody v. F.W. Woolworth Co.*, in which the Supreme Court of Virginia determined that a defendant-employer was a plaintiff's statutory employer because the "normal work" of the defendant was staffing and operating department stores—precisely the work in which plaintiff was engaged at the time of his injury. 361 S.E.2d 128 (Va. 1987).

> In the instant case Shell's control over the gasoline terminated upon its delivery to the dealer. At that point the dealer, . . . took possession and control. He could give the gas away, sell it for cash or on credit, or to a man who held a Shell credit card. While he sold gas at the retail price suggested by Shell that was not obligatory.

187 S.E.2d at 167. In this case, Plaintiff was not given any freedom in executing her bartending duties. She was directed to sell beer at a specific price and was not to deviate from the instructions given.[8]

Despite these facts, however, application of the "normal work" test to this case—without consideration of the exception embedded in the text of the test—would be in error. The Contract provides that "[d]uring the Management Term, [Defendant] SMG, either through itself or one or more of its Affiliates, will provide [the Center] with certain management and operations services, including, but not limited to, . . . catering, concession and beverage (including alcoholic beverage) services . . . ." (Contract at 3.) As such,

> the [bartending work NHSR] contracted to undertake is 'obviously a subcontracted fraction' of [Defendant SMG's] main agreement with [the owner of the Center] to provide [beer and concessions during events]. Thus, there is no need to consider the [above analysis], which comes into play only where an obvious subcontract is not first found.

---

[8] It appears that, even if this Court were to apply the "stranger to the work" test in this case, the result would be the same. *See Barnhart v. American Oil Co.*, 237 F. Supp. 492, 496 (E.D. Va. 1965) (applying Virginia law and stating that "[i]n the final analysis we think that the passing of title or ownership of the fuel oil from [defendant-employer] to [plaintiff-employee] is the most important single factor in determining whether [plaintiff-employee] was a 'stranger' to [defendant-employer's] business, trade or occupation"), *aff'd*, 354 F.2d 659 (4th Cir. 1966).

*Cooke*, 307 S.E.2d at 249; *see id.* ("*Shell Oil Co.* . . . [is] inapposite."). Therefore, this Court finds—by virtue of the "subcontracted fraction" test—that Defendant SMG was Plaintiff's statutory employer.

A plaintiff-employee constitutes a statutory employee under the Act when a person engages "in the service of another under any contract of hire or apprenticeship, written or implied." Va. Code § 65.2-101. "A 'contract of hire' is usually defined as an agreement in which an employee provides labor or personal services to an employer for wages or remuneration or other thing of value supplied by the employer." *Charlottesville Music Ctr., Inc. v. McCray*, 205 S.E.2d 674, 677 (Va. 1974) (citation omitted). Yet, "[w]hen services or labor are rendered voluntarily without a promise of compensation or remuneration of any kind, express or implied, then the one providing the services or labor has supplied them gratuitously, and is not covered by the Act." *Id.* at 678 (finding that there was no presumption of payment for the decedent's work because he came to the store of his own volition to help his friend); *see Jackson v. Ratcliff Concrete Co.*, 382 S.E.2d 494, 495 (Va. Ct. App. 1989) (finding that the plaintiff was not acting as an employee because his motivations were purely personal). *But see Atkinson v. Carpenter Ctr. for the Performing Arts*, 93 O.I.C. 160-55-24, 1993 WL 953105 (1993) (finding that a volunteer usher was an employee because she provided something of value, received benefits for doing so, and operated under the direction and control of a supervisor).[9]

---

[9] Although the decisions of a state administrative agency are not binding on this Court, they provide persuasive authority. *See Harris v. Norfolk Botanical Garden Soc'y*, No. CL09-105, 2009 WL 7388876, at *3 (Va. Cir. Ct. Sept. 11, 2009) (citing *Atkinson*, 1993 WL 953105); *see generally Johnston-Willis, Ltd. v. Kenley*, 369 S.E.2d 1, 8 (Va. Ct. App. 1988) ("The rationale of

Also pertinent to the determination of a statutory employee are the rights of

owners and independent contractors, which the Act leaves unchanged. *Crowder v.*

*Haymaker*, 178 S.E. 803, 804 (Va. 1935). Thus, courts in Virginia consider several

factors, stemming from the common law, when analyzing such employer-employee

relationships, *see id.* (considering, for example, selection and engagement, the payment

of wages, and the power of dismissal); however, the Supreme Court of Virginia has stated

unequivocally that "the first, second and third of these elements are not essential to the

relationship . . . . The 'power of control' is the most significant element bearing on the

question . . . ." *Stover v. Ratliff*, 272 S.E.2d 40, 42 (Va. 1980) (explaining such facts are

only more or less useful "in determining whose is the work and where is the power of

control" (quoting *Baker v. Nussman*, 147 S.E. 246, 249 (Va. 1929))). This point has been

further refined to make clear that it is not the "actual exercise of control" that is

determinative but is the "right to control." *W&L Constr. & Paving, Inc. v. Sullivan*, No.

2764-96-3, 1997 WL 275492, at *1 (Va. Ct. App. May 27, 1997) (unpublished) (quoting

*James v. Wood Prods. of Va.*, 427 S.E.2d 224, 226 (Va. Ct. App. 1993)); *see Hann v.*

*Times-Dispatch Pub. Co.*, 184 S.E. 183, 184–85 (Va. 1936); *see also Craddock Moving*

*& Storage Co. v. Settles*, 427 S.E.2d 428, 430 (Va. Ct. App. 1993) ("One is an employee

---

the statutory scheme is that the [administrative agency] shall apply expert discretion to matters
coming within its cognizance, and judicial interference is permissible only for relief against the
arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The
reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency
and merely substitute its own independent judgment for that of the body entrusted by the
Legislature with the administrative function." (citing *Va. Alcoholic Beverage Control Comm'n v.*
*York Street Inn, Inc.*, 257 S.E.2d 851, 855 (Va. 1979))).

of another if the person for whom he or she works has the power to direct the means and methods by which the work is done.").

In this case, Plaintiff did not receive a wage for her services, and any non-monetary remuneration for her services was minimal. *Compare* Subcontract at 4 ("There is no reserved parking for group members. . . . There will be no event watching, we request that you stay in your concession stand. No roaming the event."), *with Atkinson*, 1993 WL 953105, at *2 (permitting volunteers to see their events free of charge as well as to consume a drink at intermission). Defendant SMG gave Plaintiff only the opportunity to consume one of certain enumerated menu items during her shift.[10] (Subcontract at 5.) Despite the size of her compensation, however, the fact remains that Plaintiff could expect remuneration.[11]

More important though is the fact that Defendant SMG retained such a sizeable right to control Plaintiff during her shift. Not only was Plaintiff's attire dictated while she worked, but Defendant SMG also contracted to provide volunteers with certain accoutrements when appropriate.[12] (Subcontract at 5.) Plaintiff was prohibited from

---

[10] Even though Plaintiff's compensation was small, the intrinsic reward to Plaintiff in this case remains distinct from those in which courts have declined to find plaintiffs were statutory employees. In such cases, the relationship between the plaintiff and the person receiving the plaintiff's assistance appears to drive the plaintiff's motivation and generosity; whereas here, Plaintiff was part of an organized group that was hired to accomplish a task, and it does not appear that Plaintiff's actions were motivated by any particular relationship. *See, e.g.*, *Charlottesville Music Ctr., Inc.*, 205 S.E.2d at 676; *Jackson*, 382 S.E.2d at 494.

[11] Furthermore, the Court believes it noteworthy that NHSR received commissions for its volunteers' work. (Subcontract at 3–4.)

[12] Although the Subcontract does not indicate that Defendant SMG intended to provide such accoutrements for events at the Center, it is clear that Defendant SMG still retained the power to

soliciting tips, and was to report to the Center at the discretion of Defendant SMG.

(Subcontract at 3–4.)  Furthermore, and perhaps most important, Defendant SMG

dictated the specific duties Plaintiff was to execute and maintained the power not only to

dismiss Plaintiff if she did not comply with Defendant SMG's rules—but also to dismiss

NHSR altogether.  (Subcontract at 4, 8.)  Finally, as it appears from the pleadings and is

not disputed by the parties, she was subject to the supervision of Defendant Ruffin—who

was an agent of Defendant SMG—during the entirety of her shift.  These facts

contemplate a relationship between the parties that was characterized by a significant

degree of control.[13]

Plaintiff contends that the language in the Subcontract belies any representation

that Defendant SMG considered Plaintiff an employee, rather than an independent

contractor.  (Pl.'s Mem. Opp'n at 2–3, ECF No. 16.)  Specifically, Plaintiff directs the

---

do so as the Subcontract specifically noted this authority with respect to other event locations.
(Subcontract at 5.)  As it is the right to control that is determinative, *see W&L Constr. & Paving,
Inc.*, 1997 WL 275492, at *1, the Court finds this factor relevant to its analysis.

[13] Plaintiff also argues that, as an unpaid volunteer for NHSR, she was a noncompensated
employee of a corporation exempt from taxation pursuant to 26 U.S.C. § 501(c)(3) and therefore
necessarily is not Defendant SMG's statutory employee. *See* Va. Code § 65.2-101(2)(*l*)
("Employee shall not mean: except as otherwise provided in this title, noncompensated
employees . . . of corporations exempt from taxation pursuant to [§ 501(c)(3)].").  While it may
be the case that Plaintiff is not *NHSR*'s statutory employee under the Act, that does not prevent
her from being *Defendant SMG*'s statutory employee—particularly given that this provision of
the Act is intended to apply to charitable organizations, such as NHSR, not for-profit entities,
such as Defendant SMG.  Moreover, even if Defendant SMG were a charitable organization—
which it is not—the Court would still be obligated to analyze whether Plaintiff was compensated
for her work, *see Harris*, 2009 WL 7388876, at *3–4.  It is not clear to this Court that such
analysis would even lean in Plaintiff's favor. *Compare Harris*, 2009 WL 7388876, at *4 ("[T]he
benefit was given in return for entering the volunteer program.  The compensation here is simply
in return for being added to the list of volunteers.  It is complete at that time.  The benefit was in
effect even before [the plaintiff] actually worked as a volunteer."), *with* Subcontract at 5
(permitting volunteers to enjoy one of certain menu items while working their shifts).  Thus, the
Court finds Plaintiff's argument unavailing.

12

Court to a portion of the Subcontract that provides that "[NHSR] shall be responsible for providing appropriate insurance coverage for itself and its members. SMG is not responsible for any injuries that occur on premises." (Subcontract at 5.) She additionally points to a provision stating that "[w]hen [NHSR's employees'] operate our stands, [they] are [] independent contractor[s]." (Subcontract at 6.)

However, Plaintiff's suggestion that this provision of the Subcontract is dispositive, as the parties are bound by the plain meaning of the text of the Subcontract, is undermined by the Supreme Court of Virginia's statement that "[s]uch a recitation is not self-executing." *Richmond Newspaper v. Gill*, 294 S.E.2d 840, 843 (Va. 1982); *see id.* at 844 ("It is a truism that the name chosen by the parties to describe their relationship is ordinarily of very little importance as against the factual rights and duties they assume.").[14] Although the nature of the relationship the parties intended to create is one of the factors a court should consider—and a written declaration of the parties is relevant evidence of that intent, *see id.*—this is not the only evidence of the parties' intent that emanates from the Subcontract.[15] As discussed *supra*, Virginia law explicitly provides

---

[14] Defendants' contention—that *Richmond Newspaper* does not reach an analysis of statutory employees under the Act—is correct. This Court cites *Richmond Newspaper* for its analysis of common law employees, however, as the factors relating to master and servant relationships are pertinent to the analysis of statutory employees. *Richmond Newspaper*, 294 S.E.2d at 843–44.

[15] This is further supported by *Hayden v. Kroger Co.*, in which the Fourth Circuit found that—although the defendant's employees transported, loaded, and unloaded canned goods at the distribution center only 20% of the time in comparison with the 80% of the transporting, loading, and unloading done by the independent trucking contractors—the truckers' designation as independent contractors was not dispositive. 17 F.3d 74, 75 (4th Cir. 1994) (affirming a district court's grant of summary judgment in favor a defendant warehouse owner on the basis that the Virginia Workers' Compensation Act barred the plaintiff's tort action).

that several other factors, particularly the degree and right to control, are pivotal to the analysis of whether a plaintiff-employee is a statutory employee. *Stover*, 272 S.E.2d at 42. Thus, the aforementioned provisions in the Subcontract prove more instructive in illuminating the parties' intent in this case. Accordingly, this Court finds that Plaintiff was Defendant SMG's statutory employee for the purposes of the Act.

"[Plaintiff] has not shown by a preponderance of the evidence that [Defendant SMG] was not her 'employer' or that she was not an 'employee' under the Act. Therefore, as a matter of law, there is a presumption that her employment relationship is governed by the Act." *See Hawkins v. Robinson*, No. 2:16cv219, 2016 WL 7217662, at *5 (E.D. Va. Nov. 21, 2016) (internal alterations omitted) (citing Va. Code Ann. § 65.2-300). Therefore, because Defendant SMG was the statutory employer of Plaintiff, and Plaintiff was a statutory employee of Defendant SMG, Plaintiff's common law claim against Defendant SMG is barred by the exclusivity provision of the Act. As a result, Plaintiff's common law claim against Defendant Ruffin is similarly barred. *See Stout v. Onorati*, 267 S.E.2d 154, 158 (Va. 1980) (foreclosing plaintiff truck driver's workers' compensation suit against defendant warehouseman where plaintiff truck driver was engaged in the "ordinary or normal business" of defendant warehouse). Thus, this Court finds Plaintiff has failed to establish subject matter jurisdiction would be proper in this Court as Plaintiff's sole remedy is pursuant to the Virginia Workers' Compensation

Act.[16]  Accordingly, Defendants' Motions to Dismiss will therefore be granted, and

Plaintiff's Amended Complaint will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____

Henry E. Hudson
Senior United States District Judge

Date: July 21 2020
Richmond, Virginia

---

[16] Accordingly, this Court need not address Defendant Ruffin's allegation that Plaintiff failed to
state a claim upon which relief may be granted.  Thus, Defendant Ruffin's Rule 12(b)(6) defense
has not been waived and remains preserved.